The Honorable Brian A. Tsuchida

_____ FILED          _____ ENTERED
_____ LODGED         _____ RECEIVED

JAN 04 2016

SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
                              DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LONNIE EUGENE LILLARD,<br>NATHANIEL WELLS,<br>ERIN TERRIL WILEY, and<br>MELISA SANDERS,<br><br>Defendants. | No. MJ16 - 002<br><br>COMPLAINT FOR VIOLATION<br><br>Title 18, United States Code, Sections 1344 and 1349 |

BEFORE Brian A. Tsuchida, United States Magistrate Judge, U.S. District Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

**Count One**

**_(Conspiracy to Commit Bank Fraud)_**

**A.    The Offense**

1.    Beginning in or about July 2014, and continuing until at least September 2015, at Kent, Federal Way, Renton, Seattle, SeaTac, and Tukwila, within the Western District of Washington, and elsewhere, the defendants, LONNIE EUGENE LILLARD, NATHANIEL WELLS, ERIN TERRIL WILEY, and MELISA SANDERS, and others known and unknown, did conspire to knowingly execute a scheme and artifice to defraud

_United States v. Lillard, Wells, Wiley, and Sanders_
Complaint - 1

1  KeyBank, Green Dot Bank, Sunrise Bank, and JPMorgan Chase, all of which are

2  financial institutions as defined by Title 18, United States Code, Section 20, and to obtain

3  moneys, funds, and credits owned by and under the custody and control of those financial

4  institutions by means of materially false and fraudulent pretenses, representations, and

5  promises, as further and more particularly set forth below.

6  **B.     The Object of the Conspiracy**

7       2.     The object of the conspiracy and of the scheme and artifice to defraud was

8  to obtain cash and credit by using point-of-sale (POS) terminals to fraudulently process

9  returns from merchants; to load the funds obtained from the fraudulent returns onto pre-

10  paid debit cards, gift cards, pre-paid credit cards, and other similar cards issued by banks

11  and retailers; and then to withdraw those fraudulently obtained funds by using the pre-

12  paid debit cards, gift cards, pre-paid credit cards, and other similar cards for cash

13  withdrawals at various bank branches and automated teller machines (ATMs) in

14  Washington and elsewhere.

15  **C.     Manner and Means of the Conspiracy and Scheme and Artifice to Defraud**

16       3.     It was part of the conspiracy and scheme and artifice to defraud for

17  LONNIE EUGENE LILLARD and others known and unknown to obtain POS terminals

18  from merchants in the greater Seattle area and elsewhere.

19       4.     It was further part of the conspiracy and scheme and artifice to defraud for

20  LONNIE EUGENE LILLARD and others known and unknown to reprogram the

21  aforementioned POS terminals to change the assigned merchant identification number

22  (merchant ID) to that of a specific retailer or business.

23       5.     It was further part of the conspiracy and scheme and artifice to defraud for

24  NATHANIEL WELLS and ERIN TERRIL WILEY, and others known and unknown to

25  obtain pre-paid debit cards, gift cards, pre-paid credit cards, and other similar cards from

26  issuers such as KeyBank, US Bank, Capital One, Sunrise Bank, and others.  These pre-

27  paid cards worked similarly to credit cards, but only allowed users to withdraw and/or

28  spend funds that were previously deposited, credited, or "loaded" onto the cards.

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    6.    It was further part of the conspiracy and scheme and artifice to defraud that

2  LONNIE EUGENE LILLARD, NATHANIEL WELLS, and others known and unknown

3  would then use the reprogrammed POS terminals from hotel rooms rented for that

4  purpose by MELISA SANDERS and others known and unknown and from other

5  locations to conduct dial-in transactions through the credit card processing network and

6  banking system.  During these transactions, LONNIE EUGENE LILLARD,

7  NATHANIEL WELLS, and others known and unknown would process false and

8  fraudulent credits from specified businesses to the cards obtained by NATHANIEL

9  WELLS, ERIN TERRIL WILEY, and others known and unknown.  The credits were not

10  authorized by the particular business, and did not reflect returns of merchandise or other

11  legitimate transactions.  The transactions caused funds to be transferred from the account

12  of the particular business to the accounts associated with the cards.

13    7.    It was further part of the conspiracy and scheme and artifice to defraud that

14  NATHANIEL WELLS, ERIN TERRIL WILEY, MELISA SANDERS, and others

15  known and unknown would take the cards onto which the fraudulent credits were

16  processed, knowing that these funds did not belong to them, and either withdraw those

17  fraudulently obtained funds via ATM in a process referred to as "a cash out" or "cashing

18  out," or use the cards to purchase Western Union money orders, MoneyGrams, other

19  negotiable instruments, or automotive repairs.

20    8.    It was further part of the conspiracy and scheme and artifice to defraud for

21  NATHANIEL WELLS, ERIN TERRIL WILEY, and others known and unknown to

22  share the funds they received from these withdrawals or purchases of negotiable

23  instruments with LONNIE EUGENE LILLARD and others known and unknown.

24    All in violation of Title 18, United States Code, Sections 1344 and 1349.

25  / / /

26  / / /

27

28

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 3

I, Kevin Brennan, being first duly sworn on oath, do hereby depose and state:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since 2006. I am presently assigned to the FBI Seattle Field Office Cyber Task Force. I earned a Bachelor of Science in Computer Science from the University of Notre Dame in 2001 and a Master of Science in Information Technology (Information Security and Assurance track) from Carnegie Mellon University in 2015. I have been assigned by the FBI to work cyber investigations since 2006 in a variety of field offices. I am a Global Information Assurance Certified (GIAC) computer forensics examiner (GCFE) and GIAC incident handler (GCIH). I have received additional specialized training by the FBI in cyber investigations, including the collection and analysis of digital evidence.

2.     The information set forth in this affidavit consists of information I have gathered and observed firsthand through the course of this investigation to date, as well as information relayed to me by other law enforcement personnel, information from victim statements, interviews of witnesses, and by review and analysis of various financial records. The information in this affidavit is not intended to detail each and every fact and circumstance of the investigation or all information known to me or all the participants involved in the investigation. Rather, this affidavit serves solely to establish that probable cause exists to believe that LONNIE LILLARD, NATHANIEL WELLS, ERIN TERRIL WILEY, and MELISA SANDERS committed Conspiracy to Commit Bank Fraud in violation of Title 18, United States Code, Sections 1344 and 1349.

## II.    SUMMARY OF THE INVESTIGATION

3.     The FBI is investigating LONNIE EUGENE LILLARD, NATHANIEL WELLS, ERIN TERRIL WILEY, MELISA SANDERS, and others known and unknown for a scheme in which they defrauded banks via fraudulent credit card transactions. The total estimated amount of loss associated with the fraudulent transactions is $1,433,832 between July 8, 2014, and October 23, 2015.

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4.      The fraudulent transactions utilized in the conspiracy between LILLARD, WELLS, WILEY, SANDERS, and others known and unknown include fraudulent refunds and fraudulent reversals. I believe both transactions are processed via point-of-sale terminals in the possession of the co-conspirators that are configured to utilize merchant identification numbers that they are not authorized to use.

5.      A fraudulent refund is a standalone transaction processed by the conspirators in which they instruct the payment processor to take money from the merchant and place the money onto the credit or similar card.

6.      A fraudulent reversal consists of a series of transactions. The co-conspirators will pose as the merchant (using the merchant ID, which they are not authorized to use) and process a debit or sale using a credit or similar card (typically for $0.01). The result of this transaction will include an authorization number associated with this completed transaction. The card will then be used at a retailer—either the original merchant or another merchant entirely—for a legitimate purchase for a larger amount (typically hundreds of dollars totaling the remaining balance on the pre-paid card). The co-conspirators will then process an additional transaction fraudulently posing as the same merchant as in the first transaction, instructing the payment processor to "reverse" a transaction. The reversal transaction will provide the authorization number from the first transaction (conducted by the co-conspirators), but will provide the amount of the second (legitimate) transaction. This will effectively cause the amount of the second transaction to be removed from the balance on the card, leaving only the amount charged in the first transaction. The co-conspirators will then repeat these transactions multiple times, artificially inflating the available amount of funds on the card and then spending them. This allows the co-conspirators to spend amounts in excess of the funds legitimately loaded onto the card at the initial time of purchase.

7.      As detailed below, based on my investigation and the investigation of other law enforcement officers, I submit that probable cause exists to believe that LILLARD, WELLS, WILEY, and SANDERS committed the violation described above. In

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  particular, the FBI investigation has uncovered evidence that LILLARD, WELLS,

2  WILEY, and SANDERS conspired to commit Bank Fraud by agreeing to work together

3  to develop a plan to cause credit card and similar transactions to be drawn against

4  business accounts maintained at a variety of financial institutions to which they had no

5  legitimate access, and then to cause the funds received from these accounts to be

6  withdrawn.  These fraudulent transactions caused the theft of money under the control of

7  financial institutions, a bank fraud.

8  **III.   EXPLANATION OF TERMS AND TECHNOLOGY**

9  8.   Point-of-sale (POS) terminals are digital devices that scan a magnetic strip

10 on a debit, credit, or gift card and use the information encoded therein to conduct

11 electronic debit, credit, and gift card purchases and refunds.  These terminals are

12 commonly found next to a merchant's cash register, and are programmed with the

13 merchant's or other entity's unique information so that a transaction can be processed.

14 During a "purchase," funds are debited from the cardholder's account and credited to the

15 merchant's account.  During a "refund," the funds are debited from the merchant's

16 account and credited to the cardholder's account.  To conduct a POS transaction, a

17 merchant or customer uses a card equipped with a magnetic strip that is encoded with

18 information and slides that card through a reader mounted or attached to the POS

19 terminal.  The POS terminal then uses the card information encoded on the magnetic

20 strip, in conjunction with the merchant's information previously programmed into the

21 POS terminal, to conduct the transaction and transfer the funds.  At the time this scheme

22 was executed, the majority of POS terminals in use throughout the United States were

23 programmed to access the banking system via data connections across the Internet, not

24 via dial-in connections over a standard telephone line.  In the case of this scheme or

25 artifice to defraud, however, the particular POS terminals used placed dial-in or dial-up

26 calls to the specific processing company.

27 9.   A merchant ID is a unique identifier assigned to a business or other entity

28 that need to process debit or credit card transactions.  The merchant ID is programmed

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

into a POS terminal to identify the associated retailer or business to which the transactions should be associated.  No other password or security mechanism beyond the merchant ID is required to configure a POS terminal to conduct transactions as a specific retailer or business.

10.    A single business or other entity may have hundreds of merchant IDs, as it will have at least one unique merchant ID for each retail outlet or location where debit and credit card transactions are processed.  When a single business has multiple merchant IDs, certain processing companies assign sequential merchant IDs to the business's various outlets.  Also, certain businesses print their merchant ID on receipts they generate for their customers at the time of the transaction.  Accordingly, sometimes merchant IDs can be directly obtained from a merchant or easily guessed.

11.    A particular POS terminal is configured to process transactions with only a particular payment processor.  To process transactions with multiple payment processors, an individual would need at least one POS terminal for each different payment processor.

12.    As used here, a payment processor is an intermediary between banks and merchants that processes credit, debit, and certain gift card transactions.

**IV.    IDENTIFICATION OF INVOLVED ENTITIES**

**A.    Financial Institutions**

13.    KeyBank is an FDIC-insured bank headquartered in Cleveland, Ohio, with approximately 1,000 branches nationwide.

14.    JPMorgan Chase is a multi-national banking and financial services holding company headquartered in New York, New York, with a variety of subsidiaries, including JPMorgan Chase Bank N.A., an FDIC-insured bank, and Chase Paymentech, a payment-processing business.

15.    Green Dot Corporation is headquartered in Pasadena, California, and is the operator of Green Dot Bank, an FDIC-insured institution that is a leading provider of pre-paid debit cards.

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

16.     Sunrise Banks is an FDIC-insured institution headquartered in St. Paul, Minnesota.

17.     US Bank is a FDIC-insured bank headquartered in Minneapolis, Minnesota, with over 1,000 branches nationwide.

**B.     Victim Companies**

18.     The Michaels Companies, Inc., (dba Michaels) is a large retailer of arts and crafts supplies with outlets across the country.

19.     See's Candies is a Carson, California, headquartered retailer of chocolates and candies, with over 200 retail locations throughout the United States.

20.     Pep Boys is a Philadelphia, Pennsylvania, headquartered car parts and automotive services retailer with over 800 stores located throughout the United States.

21.     Sprint is an Overland Park, Kansas, based telecommunications company that provides cellular telephone service, Internet service, and traditional "land line" services.  Sprint operates approximately 2,700 retail stores throughout the United States.

22.     Sam Moon Group (Sam Moon) operates seven total retail stores in Texas, including separate stores focusing on the sale of luggage or home décor.

23.     Spencer Spirit Holdings, Inc., (Spencer) is a lifestyle retail company that operates two unique national brands—Spencer's (also referred to as Spencer's Gifts) and Spirit Halloween—throughout the United States, Canada, and online.  Spencer operates over 650 stores.

24.     Monroe Dodge Chrysler Jeep Dealership is an automotive dealership located in Monroe, Michigan.

25.     Chrysler of Forest City is a Forest City, Iowa, based automotive dealership.

26.     Fuqua Chrysler Dodge Jeep is a Dunkirk, Indiana, based automotive dealership.

27.     Don Hill Pontiac Jeep is a Kingsport, Tennessee, based automotive dealership.

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      28.     Campbell Ford Lincoln Mercury is a Niles, Michigan, based automotive
2   dealership.
3      29.     Sheridan Nissan LLC is a New Castle, Delaware, based automotive
4   dealership.
5      30.     Bayway Lincoln Mercury is a Houston, Texas, based automotive
6   dealership.
7      31.     Cash America International, Inc. is a Fort Worth, Texas, headquartered
8   company that operates approximately 850 pawn shops and approximately 80 check-
9   cashing stores located throughout the United States, including the Superpawn, Cash
10  America Pawn, and Cashland.
11     32.     Kelly-Moore Paint Company is a paint company headquartered in San
12  Carlos, California, that operates retail paint stores located throughout the United States.
13     33.     Hometown Buffet is one of several restaurant brands operated by Ovation
14  Brands and headquartered in Greer, South Carolina.  Hometown Buffet has
15  approximately 168 restaurants located in the United States.
16     34.     Quiznos is a sub sandwich restaurant offering sandwiches, subs, salads,
17  soups, box lunches, and catering services.
18     35.     Little Caesars Pizza is a Detroit, Michigan, based carry-out pizza chain.
19  Little Caesars operates carry-out pizza chains globally and is the third largest pizza chain
20  in the United States.
21  **C.     Payment Processors**
22     36.     Chase Paymentech is a payment processor that receives transactions
23  processed by a variety of merchants either directly or via other payment processing
24  companies.  Chase Paymentech is a subsidiary of JPMorgan Chase.
25     37.     Vantiv is a Cincinnati, Ohio, based payment processor that processes
26  transactions on behalf of merchants and automated teller machines.
27     38.     INCOMM is an Atlanta, Georgia, based payment processor that processes
28  transactions on behalf of merchants.

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V.     DETAILS OF THE INVESTIGATION

39.     In or about October 2014, FBI Seattle received information from a fraud investigator employed by KeyBank regarding a scheme in which individuals possessing pre-paid KeyBank debit cards were having fraudulent credits loaded onto the cards from businesses located throughout the United States, then withdrawing the funds at KeyBank ATMs using KeyBank cards.  The aforementioned KeyBank prepaid debit cards were "KeyBank Possibilities" cards and were not linked to any other KeyBank checking or savings account.  All of the identified fraudulent transactions provided by the KeyBank fraud investigator had been processed by Chase Paymentech between July and September 2014.  KeyBank Investigators identified these transactions due to the debit cards not having corresponding debits to the credits that were received.  Approximately $300,000 in fraudulent credits were processed onto pre-paid debit cards issued by KeyBank. KeyBank also provided FBI-Seattle with the names and some identifiers of individuals who had pre-paid debit cards issued in their names onto which the fraudulent transactions had been processed.  Many of the individuals had numerous cards associated with them. WILEY was the named individual associated with three of the cards onto which fraudulent credits were processed and funds withdrawn; WELLS was the named individual associated with eleven of the cards.

40.     KeyBank provided FBI-Seattle with a photograph of one of the individuals who had made a series of withdrawals at a drive-up ATM using a number of the pre-paid debit cards onto which the fraudulent returns had been loaded, along with a photograph of the license plate of the car being driven by that individual during the transactions.  The individual in the photograph has not yet been identified.

41.     FBI Seattle determined, through a check of records held by the Washington State Department of Licensing, that the pictured vehicle is registered to "Michael." According to LILLARD's Federal Bureau of Prisons authorized contacts list, LILLARD lists both "Michael" and WILEY as LILLARD's siblings.

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 10

42.     In October 2014, I learned that the United States Secret Service had previously investigated a similar scheme approximately eight years prior, in which "Michael," LILLARD, WELLS, and WILEY had all been suspects, and that LILLARD may have been recently released from federal prison after serving time for his involvement in another similar scheme prosecuted out of the District of Nevada.  I later confirmed that LILLARD had in fact been released on June 2, 2014.

43.     In October or November 2014, Chase Paymentech advised FBI-Seattle that the fraud scheme was continuing, and provided information that the fraudulent credits were being processed through POS terminals via numerous consecutive dial-up transactions.   Chase Paymentech also provided information identifying the various merchants who had been victimized by the fraudulent returns.  One of these merchants was Michaels.

44.     In November 2014, FBI Special Agent (SA) Joshua Michaels, FBI Forensic Accountant (FoA) Bryan Snead, FBI Intelligence Analyst (IA) Reginald Chapman, and I interviewed employees of Michaels (the company) regarding fraudulent credits processed between approximately October 28, 2014, and November 15, 2014, using Michaels' merchant IDs.  These fraudulent credits were processed through Chase Paymentech to US Bank prepaid cards, among others. Later investigation revealed a total of approximately 176 transactions totaling approximately $84,208.  The majority of these transactions occurred after business hours.

45.     In December 2014, SA Michaels, FoA Snead, IA Chapman and I interviewed and obtained information from fraud investigators of JPMorgan Chase.  They advised that, based on their analysis of transaction patterns (including consecutive dial-in refund transactions processed after normal business hours) and communications with their merchant-clients, Chase Paymentech had processed fraudulent credits pursuant to this scheme using merchant IDs belonging to Michaels (the company), Sprint, Quiznos, Pep Boys, and others.  At that time, JPMC estimated the fraudulent transaction totals processed by Chase Paymentech as approximately $685,000.  That number later grew to

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 11

1    $897,000 as the scheme continued and as more merchant-victims were identified.

2    JPMorgan Chase was able to provide FBI-Seattle with some of the phone numbers (caller

3    IDs) that were used to dial in to its payment system to process the fraudulent credits.

4        46.      Using publicly available sources, FBI-Seattle identified the phone numbers

5    provided by JPMorgan Chase as belonging to hotels in the greater Seattle area. FBI-

6    Seattle contacted those area hotels and obtained guest registry information from each for

7    the period of time during which the hotel's phones were used to process the fraudulent

8    credits. In each case, the registry showed that an individual associated with LILLARD

9    was a guest at the hotel during that time period. In one case, the hotel was able to

10    identify the particular room's phone that was used to make the dial-in transactions. That

11    room was rented at that time by SANDERS.

12        47.      During a period of time between approximately February 2015 and

13    approximately June 2015, when LILLARD was temporarily residing in the greater Seattle

14    area and purportedly looking for employment, LILLARD informed his federal probation

15    officer that he would be staying with SANDERS. LILLARD also listed SANDERS as a

16    sibling on his authorized contact list with the Federal Bureau of Prisons during his period

17    of incarceration.

18        48.      According to information provided by Western Union, an individual using

19    the name Edward Dubai sent approximately $13,023 via 18 separate wire transfers to

20    SANDERS between August 1, 2014 and October 7, 2014. According to BOP records,

21    Edward Dubai is a known alias of LILLARD. The amount transferred exceeds

22    LILLARD's legitimate income during this time period that is known to the investigative

23    team. I believe that these wire transfers include the disbursement of the fruits of the

24    conspiracy described herein.

25        49.      According to the information provided by JPMorgan Chase, on or about

26    July 23, 2014, 18 total fraudulent credits totaling $17,460 were processed during a period

27    of approximately seven hours beginning at approximately 2:52 a.m. These credits were

28    issued to the cards via transactions originating from the telephone number 206-878-0387.

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  This phone number belongs to Westview Motel in Des Moines, Washington. A review of

2  the guest registry for July 23, 2014, shows that SANDERS was a registered guest at that

3  time. Of these 18 fraudulent transactions, eight transactions, totaling $5,200, were

4  processed using merchant IDs belonging to Sam Moon Group, located in Texas. The

5  other ten transactions, totaling $12,260, were processed using merchant IDs belonging to

6  See's Candies locations in California, Oregon, and Washington.

7       50.     According to information provided by Wells Fargo, on or about July 23,

8  2014, a debit card ending in 2175 was issued by Wells Fargo to an individual that

9  presented identification at account opening belonging to SANDERS. On or about August

10 19, 2014, this debit card received three point-of-sale "purchase return" transactions

11 totaling $1,750. The merchant ID used during these transactions was assigned to a

12 Quizno's in Oakland, CA. There are no listed corresponding purchases made with the

13 card at any Quizno's. I believe that the transactions listed were fraudulent and part of the

14 scheme described herein.

15      51.     According to the information provided by JPMorgan Chase, on or about

16 December 9, 2014, 148 total fraudulent credits, totaling $67,348, were processed during a

17 period of approximately four hours beginning at 1:35 a.m. These 148 total transactions,

18 totaling $67,348, all were processed using merchant IDs belonging to Pep Boys stores

19 located throughout the state of California. These credits were issued to the cards via

20 transactions originating from the telephone number 206-248-8304. This phone number

21 belongs to Coast Gateway Hotel in SeaTac, Washington. A review of the guest registry

22 for December 9, 2014, shows that SANDERS was a registered guest at that time. In

23 addition, a review of telephone records for calls originating from the room rented by

24 SANDERS showed two telephone calls totaling approximately 17 minutes in length to

25 206-465-1540, a cellular telephone number subscribed to by WELLS. These calls to

26 WELLS were made approximately 29 minutes prior to approximately 200 telephone calls

27 made from the room rented by SANDERS to 1-800-886-1764, a telephone number used

28 by Chase Paymentech to process dial-up credit and debit card transactions. These

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 13

1  telephone calls were extremely short, usually lasting less than 20 seconds, and are

2  consistent with dial-up transactions originating from a POS terminal, which can be

3  processed in less than 20 seconds.  The discrepancy between approximately 200 phone

4  calls and 148 known fraudulent transactions can be explained by either a number of

5  transactions not being flagged as fraudulent, errors made by the user in inputting card

6  numbers, so that the transaction would be declined, or the POS terminal being

7  disconnected for any number of reasons prior to completion of the transaction.

8  According to Coast Gateway Hotel employees, they have a policy of requiring guests to

9  provide identification at check-in.

10      52.      According to the information provided by JPMorgan Chase, on or about

11  December 20, 2014, 141 total fraudulent credits, totaling $66,081, were processed during

12  a period of approximately five hours beginning at 12:55 a.m.  These credits were issued

13  to the cards via transactions originating from the telephone number 425-226-7600.  This

14  phone number belongs to Quality Inn in Renton, Washington.  A review of the guest

15  registry for December 20, 2014, shows that both SANDERS and WELLS were registered

16  guests at that time.  All 141 transactions, totaling $66,081, were processed using

17  merchant IDs belonging to Sprint retail stores located throughout the United States.

18      53.      According to the information provided by JPMorgan Chase, on or about

19  January 14, 2015, 70 total fraudulent credits, totaling $90,969, were processed.  These

20  credits were issued to the cards via transactions originating from the telephone numbers

21  509-962-6888, 509-962-6881, 509-962-6889, and 509-962-6880.  All of these phone

22  numbers belong to Super 8 Motel in Ellensburg, Washington.  A review of the guest

23  registry for January 14, 2015, shows that both SANDERS and WELLS were registered

24  guests at that time.  Forty transactions, totaling $53,485, were processed using a merchant

25  ID belonging to Monroe Dodge Chrysler Jeep located in Monroe, Michigan.  Thirty

26  transactions, totaling $37,484, were processed using a merchant ID belonging to Chrysler

27  Forest City located in Forest City, Iowa.

28

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

54.     According to the information provided by JPMorgan Chase, on or about January 15, 2015, 95 total fraudulent credits, totaling $101,840, were processed.  These credits were issued to the cards via transactions originating from the telephone numbers 509-962-6888, 509-962-6881, 509-962-6889, and 509-962-6880, the same phone numbers listed above regarding the January 14, 2015, transactions.   These phone numbers belong to Super 8 Motel in Ellensburg, Washington.  A review of the guest registry for January 15, 2015, shows that SANDERS was a registered guest at that time.  Of these 95 transactions, two transactions, totaling $40, were processed using a merchant ID belonging to Chrysler Forest City located in Forest City, Iowa.  Sixty-one transactions, totaling $66,700, were processed using a merchant ID belonging to Don Hill Pontiac Jeep located in Kingsport, Tennessee.  Thirty-two transactions, totaling $35,100, were processed using a merchant ID belonging to Fuqua Chrysler Dodge Jeep RAM in Dunkirk, Indiana.

55.     LILLARD listed WELLS on his authorized contact list with the Federal Bureau of Prisons, including his email address and his phone number.  I confirmed from records of the telephone service provider that WELLS is the subscriber for that phone number.  A review of LILLARD's telephone calls while he was incarcerated show 11 telephone calls from LILLARD to WELLS.

56.     From July 1, 2014, to December 23, 2014, WELLS made approximately 3,000 phone calls and text messages to a particular cell phone number known to investigators, representing the fourth most common number that WELLS contacted during this period.  Two different witnesses have identified this cell phone number to investigators as belonging to LILLARD.  LILLARD was released from incarceration on June 2, 2014.

57.     On or about December 26, 2014, WELLS received fraudulent credits to two Capital One credit cards (not pre-paid cards) issued in his name and ending in 3090 and 2892.  Two credits of $400 each were processed using merchant IDs belonging to Spencer Gifts stores located in Illinois and Kansas to his card ending in 3090.  Two

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | credits of $500 each were processed using the same Spencers Gifts merchant IDs to his
2 | card ending in 2892. These transactions were processed via Chase Paymentech, which
3 | later identified these transactions as fraudulent. These credits were issued to the cards via
4 | transactions originating from the telephone number 425-226-4100. This phone number
5 | belongs to SpringHill Suites, Renton, Washington. A review of the guest registry for
6 | December 25, 2014, shows that WELLS was a registered guest from the night of
7 | December 25, 2014, to December 26, 2014. The guest registry also showed that the
8 | aforementioned Capital One credit card belonging to WELLS ending in 2892 was used to
9 | pay for the room and associated incidental charges at the SpringHill Suites.

10 | 58.   LILLARD listed WILEY as a sibling on his authorized contact list with the
11 | Federal Bureau of Prisons during the period of his incarceration. WILEY was also in
12 | contact with WELLS, exchanging approximately 150 telephone calls with WELLS
13 | between July 1, 2014, and December 23, 2014.

14 | 59.   On or about July 8, 2014, 17 total fraudulent credits totaling approximately
15 | $7,148 were processed during an approximately four hour period beginning at 4:41 a.m.
16 | These credits were issued to the cards via transactions originating from the telephone
17 | number 206-248-1000. This phone number belongs to the Crowne Plaza in Seattle,
18 | Washington. A review of the guest registry for July 7, 2014, shows that WILEY was a
19 | registered guest at that time. Of these 17 transactions, two transactions, totaling
20 | approximately $671, were processed using a merchant ID belonging to Superpawn #1669
21 | located in Peoria, Arizona. Nine transactions, totaling approximately $3,916, were
22 | processed using merchant IDs belonging to various Cashland Financial Services stores
23 | located throughout the United States. Four transactions, totaling approximately $1,686,
24 | were processed using merchant IDs belonging to Cash America Pawn stores located
25 | throughout the United States.

26 | 60.   In or about August through September 2014, 20 Key Possibility Cards were
27 | issued in the name of "Shumika" to an applicant using "Shumika"'s social security
28 | number. Several of these cards received credits from auto dealerships throughout the

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  United States, as described below and as provided to investigators by KeyBank. On
2  September 11, 2014, "Shumika" received fraudulent credits to a card ending in 82323.
3  One credit was received at 3:21 a.m. from Sheridan Nissan LLC located in New Castle,
4  Delaware, totaling $2,000.
5       61.    On the same day, the same card ending 82323 belonging to "Shumika" had
6  three debit transactions totaling $1,480. At 5:10 a.m., $500 was withdrawn from the
7  Rainier Beach KeyBank ATM. At 5:11 a.m., $500 was withdrawn from the Rainier
8  Beach KeyBank ATM. At 5:12 a.m., $480 was withdrawn from the Rainier Beach
9  KeyBank ATM.
10      62.    On September 11 and September 12, 2014, "Shumika" received fraudulent
11 credits to a card ending in 82364 according to KeyBank. On September 11, 2014, one
12 credit was received at 4:05 a.m. from Bayway Lincoln Mercury located in Houston,
13 Texas, totaling $2,000.
14      63.    On September 11 and September 12, 2014, a card ending 82364 belonging
15 to "Shumika" had four debit transactions totaling $1,480. Sequentially, these transactions
16 were as follows: On September 11, 2014, at 5:09 a.m., $480 was withdrawn from the
17 Renton branch KeyBank ATM. At 10:46 p.m., $300 was withdrawn from an ATM
18 within Walmart store #58 located in Portland, Oregon. On September 12, 2014, at 2:03
19 a.m., $500 was withdrawn from the Hayden Island KeyBank ATM located in Portland,
20 Oregon. At 6:18 a.m., $200 was withdrawn from the Vancouver Main KeyBank ATM
21 located in Vancouver, Washington.
22      64.    In July 2015, FBI Task Force Officer (TFO) and Kirkland Police
23 Department Detective Derek Hill and IA Chapman interviewed two individuals
24 associated with this scheme, "J" and "E." J and E acknowledged their participation in the
25 aforementioned scheme. J has four felony convictions, three of which relate to
26 Possession or Trafficking of Stolen Property and the fourth is for Possession of a
27 Controlled Substance. E has no known felony convictions.
28

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 17

65.     J's participation in the scheme described herein included acting as a driver for LILLARD.  J also registered hotel rooms under his name from which fraudulent transactions occurred.  J was also aware of hotel rooms rented by WELLS and SANDERS from which fraudulent transactions occurred.  J recruited additional participants for LILLARD and introduced E to LILLARD.  E was not knowingly an active participant, but witnessed LILLARD and WELLS utilizing a POS terminal to load debit cards.

66.     J explained that LILLARD was the leader of the scheme, and confirmed that LILLARD was the one who programmed and used the POS terminals to fraudulently load credits onto the cards.  J and E both described LILLARD using POS terminals to process fraudulent credit and other card transactions while WELLS was present.  J described LILLARD as carrying the cards onto which credits would be fraudulently loaded in a binder similar to the type used to carry baseball cards.  J said this binder would be in LILLARD's possession at all times.

67.     Throughout the scheme described herein, J was present in hotel rooms located throughout the Western District of Washington when LILLARD "swiped" credit cards through POS terminals for the purposes of conducting fraudulent refund transactions.

68.     Throughout the scheme described herein, J would drive LILLARD, who J described as the leader of the scheme, to hotels in the Western District of Washington and elsewhere.  J said the rooms were never rented by LILLARD or in LILLARD's own name.  LILLARD would then utilize the hotel room that had been rented by others known and unknown.  LILLARD would carry POS terminals with him into the room and conduct fraudulent refund transactions.

69.     J stated that in addition to rooms rented by J for LILLARD, SANDERS would also rent rooms for LILLARD for the purposes of conducting the fraud described herein.  J stated that SANDERS was "always good for helping a brother out."

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

70.     On or about January 23, 2015, LILLARD, WELLS, and another known individual entered a hotel located in Tukwila, Washington, for the purposes of conducting fraudulent POS transactions.  E saw LILLARD in possession of POS terminals that E knew to be used by LILLARD for such transactions, and saw LILLARD "swiping" cards through the POS terminal.

71.     During the course of the scheme described herein, LILLARD sent a text message via cellular telephone to J.  This text message contained an image of a bed covered with a large number of money orders.  TFO Hill and IA Chapman have reviewed this text message and photograph.  On or about February 9, 2015, LILLARD utilized 17 money orders in various amounts under $1,000 to pay a total of $7,572.98 on rent for an office space located in Ellensburg, Washington.

72.     In July and August 2015, employees of Green Dot Corporation and KeyBank provided information regarding fraudulent refund transactions in the above scheme.  The KeyBank investigator provided surveillance photographs of an individual withdrawing the funds fraudulently loaded onto KeyBank cards via ATM, including an individual who appears to be WILEY.  A Fred Meyer investigator provided surveillance video showing the same individual appearing to be Wiley conducting a transaction on the same date as the KeyBank ATM withdrawal wearing the same clothing.  These transactions involving a card ending in 02451 are discussed in more detail in paragraphs 90, 92, 96, and 98.

73.     In July 2015, an employee of Fred Meyer provided surveillance footage of an individual who appears to be WILEY making purchases of Western Union money orders and wearing the same clothing as in the surveillance footage provided by KeyBank.  This transaction and video is discussed in more detail in paragraph 95.

74.     On or about June 2, 2014, LILLARD was released from the custody of the United States Bureau of Prisons after serving a sentence for wire fraud, conspiracy to commit wire fraud, and other charges for his involvement in a scheme similar to that described herein, previously charged in the District of Nevada (under 2:06CR00291PMP-

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | 001) that resulted in a sentence of 105 months.  The scheme described herein began in
2 | July 2014.

3 |      75.     I obtained recordings of telephone conversations made by United States
4 | Bureau of Prisons inmate "Marcus," who has been incarcerated on felony charges related
5 | to his participation in the prior scheme for which LILLARD served a sentence in federal
6 | prison as described earlier, with a release date of October 5, 2015.  In one phone call on
7 | March 5, 2015, "Marcus" spoke to LILLARD, who described to "Marcus" how "these
8 | niggers went through forty thousand and then they count on my motherfucking money"
9 | and that "Erin went through twelve thousand in one week," which I believe refers to
10 | WILEY.  LILLARD further stated that these individuals "ain't committed to the cause
11 | like me."  LILLARD said that he had been busy "ripping and running," which I believe
12 | means conducting activities in furtherance of the scheme described herein.  LILLARD
13 | said that unspecified individuals were returning to the same spot "fifteen motherfucking
14 | times" to purchase Western Union money orders and were told by the employee that they
15 | would have to pay cash for the Western Union money orders in the future.  LILLARD
16 | described how he told the unspecified individuals that Western Union locations have
17 | reporting thresholds for individuals conducting transactions in excess of a certain amount.
18 | During this call, "Marcus" offered to "do everything" and allow LILLARD to "sit back
19 | and relax" once "Marcus" was released from prison.

20 |      76.     Investigators obtained surveillance video showing LILLARD entering a
21 | Walgreens store located in Renton, Washington, on June 23, 2015.  LILLARD entered
22 | the store with an individual known to investigators, M.  In the aforementioned interview
23 | with J, J told investigators that he introduced M to LILLARD and that M had traveled to
24 | Seattle on June 23, 2015, to work with LILLARD.  While in the store, LILLARD and M
25 | are seen at a Western Union kiosk conducting a transaction.  LILLARD exited the store,
26 | at which time M completed the transaction with a Walgreens associate.  A card ending
27 | 5052 was used to purchase a $300 Western Union wire transfer in the name of James
28 | Jerry Jones payable to LILLARD.  Associated with this purchase was a $24 service fee

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 20

1  for a grand total of $324.00. According to Western Union records, this wire was received

2  on June 27, 2015, at Check into Cash #11022 located in Vancouver, Washington.

3       77.    Investigators obtained surveillance video showing LILLARD entering

4  Check into Cash #11022 on June 27, 2015, and receiving the $300.00 in funds from the

5  June 23, 2015, Western Union wire transfer. The card ending in 5052 is a Walmart

6  Variable Happy Birthday VISA gift card that was purchased in Renton, Washington, and

7  activated on June 22, 2015, at approximately 7:45 a.m. with a balance of $500.00. These

8  gift cards are issued through Sunrise Bank and are managed by Green Dot Bank.

9  Between June 23, 2015, and June 25, 2015, the card ending in 5052 received 37

10  fraudulent debits totaling approximately $14,996. Green Dot Bank verified the actual

11  loss associated to the card 5052 to be approximately $13,033. Green Dot Bank verified

12  that it is the victim bank for all fraudulent activity associated with this card. Green Dot

13  Bank also verified that the card ending in 5052 received funds by fraudulently

14  authorizing reversals using the merchant ID belonging to Hometown Buffet store #0302

15  located in Happy Valley, Oregon.

16       78.    Investigators obtained surveillance video from June 26, 2015, showing

17  LILLARD conducting a transaction at Fred Meyer store #360 located in Portland,

18  Oregon. According to Western Union records, a Western Union wire transfer was

19  purchased in the amount of $976 by LILLARD and payable to Ester Jordan. According

20  to records received from Fred Meyer, this purchase was made by splitting the cost across

21  two separate cards. A card ending in 2760 was charged $476.13 and a card ending in

22  2588 was charged $499.87.

23       79.    The card ending in 2760 is a Walmart Variable Presents VISA gift card that

24  was purchased in Vancouver, Washington, and activated on June 26, 2015, at

25  approximately 8:07 a.m. with a balance of $500.00. These gift cards are issued through

26  Sunrise Bank and are managed by Green Dot Bank. Between the dates of June 26, 2015,

27  and June 29, 2015, the card ending in 2760 received 56 fraudulent debits totaling

28  approximately $25,829. Green Dot Bank verified the actual loss associated to the card

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 21

1  ending in 2760 to be approximately $23,399. Additionally, Green Dot Bank verified that,

2  because the above-mentioned transactions occurred over a weekend, the cardholder was

3  able to take advantage of their processing system by continuously charging fraudulent

4  debits to this card even after the initial $500.00 purchase amount was spent. Green Dot

5  Bank verified that it is the victim bank for all fraudulent activity associated with this card.

6  Green Dot Bank also verified that the card ending in 2760 received funds by fraudulently

7  authorizing reversals using the merchant ID numbers belonging to Hometown Buffet

8  store #0313 located in Vacaville, California, and Old Country Buffet store #0314 located

9  in Mesa, Arizona.

10      80.      The card ending in 2588 is a Walmart Variable Presents VISA gift card that

11  was purchased in Vancouver, Washington, and activated on June 26, 2015, at

12  approximately 8:03 a.m. with a balance of $500.00. These gift cards are issued through

13  Sunrise Bank and are managed by Green Dot Bank. Between the dates of June 26, 2015,

14  and June 29, 2015, the card ending in 2588 received approximately 54 fraudulent debits

15  totaling approximately $24,545. Green Dot Bank verified the actual loss associated to

16  card 2588 to be approximately $20,078. Additionally, Green Dot Bank again verified

17  that, because the above-mentioned transactions occurred over a weekend, the cardholder

18  was able to take advantage of their processing system by continuously charging

19  fraudulent debits to this card even after the initial $500.00 purchase amount was spent.

20  Green Dot Bank verified that it is the victim bank for all fraudulent activity associated

21  with this card. Green Dot Bank also verified that card ending in 2588 received funds by

22  fraudulently authorizing reversals from June 26, 2015, to June 29, 2015, using the

23  merchant ID numbers belonging to Hometown Buffet store #0313 located in Vacaville,

24  California, and Old Country Buffet store #0314 located in Mesa, Arizona.

25      81.      Investigators obtained surveillance video from June 26, 2015, showing

26  LILLARD conducting a transaction at Fred Meyer store #255 located in Portland,

27  Oregon. According to Western Union records, a Western Union wire transfer was

28  purchased by LILLARD for $987.98 payable to Ester Jordan. According to records

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 22

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    received from Fred Meyer, the card ending in 2760 was charged $497.98 and the card

2    ending in 2588 was charged $490.  Both cards were loaded and debited as described

3    above.

4         82.    Investigators obtained surveillance video from June 26, 2015, showing

5    LILLARD conducting a transaction at Fred Meyer store #150 located in Portland,

6    Oregon.  According to Western Union records, a Western Union wire transfer was

7    purchased by LILLARD for $976 payable to Juanita Booker.  According to records

8    received from Fred Meyer, the card ending in 2760 was charged $486 and the card

9    ending in 2588 was charged $490.   Both cards were loaded and debited as described

10   above.

11        83.    Investigators obtained surveillance video from September 8, 2015, showing

12   LILLARD conducting transactions at Fred Meyer store #023 located in Bellevue,

13   Washington.  According to INCOMM and Fred Meyer records, a card ending in 0081

14   was charged $494.95 and a card ending in 3096 was charged $494.95.  Fred Meyer

15   transaction receipt records show these purchases were for two MasterCard Variable gift

16   cards.  Each card was initially loaded with $489.00, and each card required the payment

17   of a $5.95 activation fee.  This transaction occurred at approximately 3:23 p.m.  At

18   approximately 5:19 p.m. on September 8, 2015, the cards ending in 3096 and 0081 were

19   both used at the Walmart store #3098 located in Bellevue, Washington.  Investigators

20   obtained surveillance video from Walmart showing LILLARD conducting a transaction

21   using each card to make a $490.00 purchase.  According to Walmart transaction/receipt

22   records, cards ending in 3096 and 0081 were used to purchase iTunes gift cards.

23        84.    At approximately 6:13 p.m. on the same day, the card ending 3096 was

24   used at the QFC #5822 (Quality Food Center) located in Bellevue, Washington.

25   Investigators obtained surveillance video from QFC showing LILLARD conducting a

26   transaction using the card ending in 3096 to make a $989.90 purchase.  According to

27   QFC transaction/receipt records, the card ending in 3096 was used to purchase two

28

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 23

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 $489.00 MasterCard gift cards. There was an additional $11.90 in activation fees

2 charged in total.

3      85.      INCOMM has verified that the cards ending in 3096 and 0081 are Walmart

4 One Vanilla MasterCard Variable cards that were issued through Bancorp, Inc., and are

5 managed by INCOMM. The card ending in 3096 was purchased on September 7, 2015,

6 at approximately 6:01 p.m. with an initial load of $495.00. The card ending in 0081 was

7 purchased on September 7, 2015, at approximately 6:11 p.m. with an initial load of

8 $495.00. On September 8, 2015, the card ending in 3096 received 15 fraudulent reversals

9 totaling $6,801.50 with an actual loss of $5,811.50. On September 8, 2015, the card

10 ending in 0081 received 14 fraudulent reversals totaling $6,339.95 with an actual loss of

11 $4,359.95. INCOMM verified that the card ending in 0081 received funds by

12 fraudulently authorizing reversals using the merchant ID belonging to Little Caesars store

13 #0013 located in North Richland Hills, Texas. INCOMM verified that the card ending in

14 3096 received funds by fraudulently authorizing reversals using the merchant ID

15 belonging to Home Town Buffet store #0252 located in Westchester, California.

16      86.      These transactions are summarized in the following table:

| Date | Time | Activity |
| --- | --- | --- |
| Sept. 7, 2015 | 9:01-9:11 p.m. | Cards ending in 0811 and 3096 are activated and loaded with $495 each |
| Sept. 8, 2015 | 10:26 a.m.-2:46 p.m. | Cards ending 0811 and 3096 are used by unknown individuals for purchases and then loaded through fraudulent reversals |
| Sept. 8, 2015 | 3:23 p.m. | LILLARD on video using both cards at Fred Meyer |
| Sept. 8, 2015 | 3:27-3:32 p.m. | Cards ending 0811 and 3096 loaded by fraudulent reversals |
| Sept. 8, 2015 | 5:19 p.m. | LILLARD on video using both cards at Walmart |
| Sept. 8, 2015 | 5:24-5:26 p.m. | Cards ending 0811 and 3096 loaded by fraudulent reversals |

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 24

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Sept. 8, 2015 | 6:13 p.m. | LILLARD on video using card 3096 at QFC |

87.     During these aforementioned transactions—the Western Union purchase at Walgreens on June 23, 2015, the Western Union purchases at three different Fred Meyer stores on June 26, 2015, and the September 8, 2015, purchases at Fred Meyer and Walmart—LILLARD is depicted on surveillance video holding a binder similar to the binder described by J.

88.     On April 9, 2015, LILLARD made a purchase at a Ben Bridge Jeweler store located in Seattle, Washington.  The $900 purchase of a gift card was split across two prepaid credit cards.  Ben Bridge employees later determined that the cards that made this purchase were not valid.  A Ben Bridge employee provided two surveillance stills of an individual I believe to be LILLARD with a binder similar to the binder described by J.

89.     On July 31, 2015, KeyBank issued a card ending in 78558 to "Q.T."  On August 2, 2015, a total of 18 fraudulent credits from Papa Murphy's ranging between $199.83 and $199.99 were made to the card totaling approximately $3,598.  On August 2, 2015, the card mentioned above issued to "Q.T." was used to place two separate online orders for a total of three pairs of Nike shoes. The shipping information listed for both orders included WELLS's name and the order information included the telephone number belonging to WELLS.

90.     Investigators obtained surveillance video stills from KeyBank from July 26, 2015, showing WILEY driving a silver Infiniti SUV bearing California license plate number 7ETY706.  The video stills show the vehicle at a drive-up ATM, and shows WILEY completing six transactions over a period of four minutes utilizing three cards ending in 02451, 02469, and 63580.  The cards ending in 02451 and 02469 were issued in the name of "Shumika."  The card ending in 63580 was issued in the name of WILEY.

91.     According to California DOL the registered owner of the silver Infiniti is PV Holdings, which is the parent company of Avis rentals.  PV Holdings provided rental

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 25

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  records showing this vehicle to be a Gray 2014 Infiniti QX70 rented by "Shumika" from

2  July 3, 2015, to August 3, 2015, for $3,645.83, which was paid with a VISA card ending

3  in 5545.  In addition, PV Holdings records indicate during the aforementioned rental

4  period, this vehicle was driven 3,301 miles. As discussed earlier, "Shumika" is the named

5  individual on KeyBank debit cards used by WILEY during attempted transactions at

6  various Fred Meyer, KeyBank ATMs, and Walmart.

7       92.    On July 25, 2015 at approximately 11:47 p.m., a card ending in 02451 was

8  used to purchase two Western Union money orders for $499.  Surveillance photos

9  provided by a Fred Meyer investigator show WILEY conducting this transaction.  This

10  card was loaded between approximately July 24, 2015, through July 26, 2015, with funds

11  via 24 fraudulent refund transactions totaling approximately $4,799.  These transactions

12  were processed using a merchant ID belonging to the Hometown Buffet restaurant

13  located in Temple City, California.

14       93.    From 11:53 p.m. on July 25, 2015, to 12:00 a.m. on July 26, 2015, a card

15  ending in 02519 was used in four separate transactions.  Two of the transactions were for

16  Western Union money orders totaling $911.74.  These transactions were declined.   The

17  other two transactions, totaling $8.74, were approved.  Surveillance photos provided by a

18  Fred Meyer investigator show WILEY conducting these four transactions.  This card was

19  issued on July 24, 2015, in the name of "Shumika."  This card was loaded on July 25,

20  2015, with funds via 12 fraudulent credit transactions totaling approximately $2,399.

21  These transactions were processed using a merchant ID belonging to the Hometown

22  Buffet outlet located in Temple City, California.

23       94.    From 10:50 a.m. on July 25, 2015, to 10:51 a.m. on July 26, 2015, a card

24  ending in 02469 was used in two separate transactions.  The two transactions were ATM

25  withdrawals from the Andover Park KeyBank branch.  Each transaction was for $500

26  totaling $1,000.  Surveillance photos provided by a KeyBank investigator show WILEY

27  conducting these transactions. This card was issued in the name of "Shumika."  This card

28  was loaded between approximately July 24, 2015, through July 26, 2015, with funds via

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 26

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

24 fraudulent credit transactions totaling approximately $4,799. These transactions were processed using a merchant ID belonging to the Hometown Buffet restaurant located in Temple City, California.

95.     On July 26, 2015, a card ending in 10402 was used in two separate transactions at a Renton, Washington, Fred Meyer store for Western Union money orders totaling $1,495. These transactions were declined.  Surveillance photos provided by a Fred Meyer investigator show WILEY conducting these transactions. This card was issued in the name of WILEY. This card was loaded between approximately July 25, 2015, through July 27, 2015, with funds via 34 fraudulent refund transactions totaling approximately $6,799. These transactions were processed using merchant IDs belonging to the Hometown Buffet outlet located in Temple City, California.

96.     On July 26, 2015, at approximately 10:51 a.m., a card ending in 02451 was used to make a $500 withdrawal through the drive-thru ATM located at 275 Andover Parkway West, Tukwila, Washington. Surveillance photos provided by a KeyBank investigator show WILEY conducting this withdrawal. Additionally, WILEY is wearing the same clothing he wore while making the Renton Fred Meyer transaction on July 26, 2015. This is the same card described in paragraph 92 above, which was loaded between approximately July 24, 2015, through July 26, 2015, with funds via 24 fraudulent refund transactions totaling approximately $4,799. These transactions were processed using a merchant ID belonging to the Hometown Buffet restaurant located in Temple City, California.

97.     On July 26, 2015, at approximately 1:31 p.m., a card ending in 63580 was used to conduct a $500 transaction at the Walmart #2571 located in Federal Way, Washington. Surveillance photos provided by a Walmart investigator show WILEY conducting this transaction. Additionally, WILEY is depicted on surveillance video arriving and departing in the rented silver Infiniti. This card was issued in the name of WILEY. This card was loaded on approximately July 24, 2015, through July 26, 2015 with funds via 24 fraudulent refund transactions totaling approximately $4,799. These

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 27

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | transactions were processed using a merchant ID belonging to Hometown Buffet located
2 | in Temple City, California.

3 |     98.    On July 26, 2015, at approximately 1:41 p.m., a card ending in 02451 was
4 | used to conduct a $9.37 transaction at the Walmart #2571, the same Walmart described in
5 | the previous paragraph.  Surveillance photos provided by a Walmart investigator show
6 | WILEY conducting this transaction.  This card was issued in the name of "Shumika."
7 | This is the same card described in paragraphs 92 and 96 above.

8 |     99.    On July 26, 2015, at approximately 1:55 p.m., a card ending in 10428 was
9 | used to conduct a $960.70 transaction at the customer service desk at Walmart #2571, the
10 | same Walmart described in the previous two paragraphs.  Surveillance photos provided
11 | by a Walmart investigator show WILEY conducting this transaction.  This card was
12 | issued in the name of WILEY.  This card was loaded between approximately July 25,
13 | 2015, and July 27, 2015, with funds via 42 fraudulent refund transactions totaling
14 | approximately $8,399.  These transactions were processed using a merchant ID belonging
15 | to the Hometown Buffet restaurant located in Temple City, California.

16 |     100.    On July 25, 2015, at approximately 1:53 p.m., WILEY was recorded on
17 | surveillance video at the Renton Fred Meyer attempting to purchase a Western Union
18 | money order for $500 using a credit card ending in 02519.  This transaction was declined.
19 | WILEY attempted a similar transaction minutes later using the same card.  This card was
20 | issued by KeyBank in the name of "Shumika."  This is the same card described in
21 | paragraph 93 above.

22 |     101.    Investigators have identified at least 4,282 fraudulent transactions
23 | conducted during the course of the scheme that can be tied directly to LILLARD,
24 | WELLS, WILEY, SANDERS, "Shumika'" or individuals known to be associated with
25 | them during the course of this and/or previous schemes.

26 |     102.    The scheme to date has exposed the various victims to a total potential loss
27 | of at least $2,222,495, with an estimated total loss to the various victims of at least
28 | $1,433,832.  For example, between June 18, 2015, and July 1, 2015, the scheme

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   conducted approximately 1700 transactions leaving one victim—Green Dot Bank—

2   exposed to approximately $748,743 in potential losses.

3       103.   Based on the foregoing, I respectfully submit that probable cause exists to

4   believe that LILLARD, WELLS, WILEY, and SANDERS did conspire to knowingly

5   execute and attempt to execute a scheme or artifice to defraud a financial institution, and

6   to obtain money, funds, and other property owned by and under the custody and control

7   of a financial institution by means of false and fraudulent pretenses and representations,

8   all in violation of Title 18, United States Code, Sections 1344 and 1349.

9

10

11   KEVIN BRENNAN

12   Special Agent
    Federal Bureau of Investigation

13

14

15   SUBSCRIBED and SWORN to before me this 4th day of January, 2016.

16

17

18   Brian A. Tsuchida
    United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

*United States v. Lillard, Wells, Wiley, and Sanders*
Complaint - 29

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970